UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARRIN L. TUDOR, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:13-cv-756-TAB-TWP |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

The parties appeared by counsel June 25, 2014, for an oral argument on Plaintiff's claim for disability benefits. Set forth below is the Court's oral ruling from the bench following that argument. This ruling affirms the decision of the Commissioner, and denies the Plaintiff's claim for disability benefits.

THE COURT: I will now render my decision in this case. This case presents four issues for appeal. The first is whether the ALJ's decision that plaintiff's ankle and foot drop condition did not meet or equal listing 1.02a is supported by substantial evidence; second, whether the ALJ's failure to summon a medical advisor requires reversal; third, whether the ALJ erred in evaluating plaintiff's credibility; and fourth, whether the ALJ considered all of plaintiff's impairments in determining plaintiff's RFC.

By way of background, plaintiff alleges he became disabled on November 13th, 2010. He claims disability because of the foot drop, a symptom resulting from his 1995 surgery to remove an osteosarcoma from his left leg. These claims were initially denied and upon

reconsideration by the appeals counsel on June 14, 2011. The ALJ denied the application for benefits in a February 24, 2012, decision; and this appeal followed.

In considering this appeal, the Court notes that it is bound to uphold the ALJ's decision if that decision is supported by substantial evidence, Terry, T-E-R-R-Y, versus Astrue, A-S-T-R-U-E, 580 F.3rd 471 at 475, 7th Circuit 2009.

As to the first issue, plaintiff claims that the ALJ erred in determining that he is not disabled under listing 1.02a. Plaintiff argues the ALJ selectively considered and ignored medical evidence from treating and examining physicians, specifically, a series of visits to Dr. John Dustin, Tudor's treating physician, between August 10, 2011, and December 15, 2011.

Further, plaintiff points to an examination by Dr. Thomas Alley, A-L-L-E-Y, and Dr. Timothy Vonfange, V-O-N-F-A-N-G-E, to support assertions that he was unable to control his left foot and was experiencing sharp pain in his left leg.

Lastly, plaintiff argues that the ALJ incorrectly characterized Dr. Joseph Croffie, C-R-O-F-F-I-E -- Dr. Joseph Croffie's report.

The ALJ reported there was no muscle wasting, but Dr. Croffie's report indicated plaintiff's thighs and calves were different lengths; and that was addressed in more detail in the briefing than it was at oral argument. I find that the ALJ supported her conclusion that plaintiff did not meet listing 1.02 with substantial evidence.

The language of listing 1.00 defines ineffective ambulation for the purposes of listing 1.02a as, quote, "having insufficient lower extremity functioning...to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," end quote.

2

The ALJ determined based on the medical evidence that plaintiff used one cane and that the use of a wheelchair, walker or other similar device was not warranted. Therefore, the ALJ determined the plaintiff does not satisfy the requirement of listing 1.02a.

I would note that I am troubled by the fact that plaintiff's brief, specifically, docket No. 22 at page 13, uses ellipses to eliminate certain words from the definition of that listing, as I had noted during oral argument and, thus, in my view, misstates the listing requirements.

The ALJ discussed plaintiff's December 15, 2011, visit to Dr. Dustin, treating doctor. A foot brace was in place on plaintiff's left leg which helped with his foot drop. In fact, plaintiff mentioned at his appointment that while he was still adjusting to wearing the foot brace, he had not fallen since wearing it. That's in the record at 259.

Dr. Dustin noted that plaintiff still had an abnormal gait, but there was no swelling of the joint. Dr. Dustin recommended that plaintiff continue using his brace because it was preventing Tudor from falling down. He also refilled plaintiff's prescription for Vicodin and encouraged plaintiff to implement lifestyle changes such as exercising on a regular basis. That's in the record at 259 through 260. The ALJ used this evidence in her conclusion that the foot brace helped with plaintiff's foot drop.

The ALJ considered plaintiff's ongoing treatment by Dr. Dustin throughout her opinion. Language from Dr. Dustin's follow-up medical source statement dated January 23rd, 2012, was adopted directly into plaintiff's RFC. That's in the record at 19.

Furthermore, as plaintiff's counsel acknowledged at the oral argument, the ALJ noted that Dr. Dustin never indicated the plaintiff was disabled. Rather, the ALJ observed that plaintiff's complaints of pain and limited ability to ambulate were alleviated by following plaintiff's prescribed course of treatment.

The ALJ reported that plaintiff was, quote, "satisfied with pain control," end quote, during his September 22nd, 2011, visit to Dr. Dustin. That's in the record at page 255.

Lastly, the ALJ noted that plaintiff reported on September 7, 2011, he was, quote, "better with stairs," end quote, to Dr. Dustin at a physical therapy progress note. That's in the record at page 236.

Moreover, the ALJ did not mischaracterize Dr. Croffie's report, which is in the record at pages 217 through 220. Although Dr. Croffie indicated plaintiff's thighs and calves were different lengths, Dr. Croffie specifically stated the plaintiff's muscle strength was 5 out of 5 in all extremities and that, quote, "there was no muscle wasting," end quote. That's in the record at page 219. Dr. Croffie also noted plaintiff was not taking any medication for pain.

The ALJ noted other impairments listed in Dr. Croffie's report, including that plaintiff had a history of numbness in his right foot, nerve problems and difficulty walking.

Contrary to plaintiff's assertion, the ALJ also addressed plaintiff's treatment from Dr. Vonfange for pain. That's in the record at 17. Consistent with the medical evidence, including notes from Dr. Vonfange and from Dr. Dustin, the ALJ noted that plaintiff had pain that increased with prolonged walking but that medication helped the pain and that plaintiff was satisfied with pain control.

Contrary to the plaintiff's assertion, the ALJ considered the medical reports and opinions of five doctors in addition to Dr. Dustin, including two doctors that plaintiff fails to mention in his brief to the Court. Specifically, that's Dr. J. Sands and Dr. Amy Lahood.

Taken as a whole, the ALJ concluded that plaintiff possessed no additional medical conditions aside from a history of cancer in his leg, pain, and foot drop that warrant additional restrictions. The medical opinions and documentation used by the ALJ to determine that

4

plaintiff does not meet listing 1.02 established that the ALJ supported her determination with substantial evidence.

The second issue before the Court is whether the ALJ erred in failing to summon a medical advisor to determine whether plaintiff's combined impairments met or equaled the listing. Plaintiff asserts that if the State agency physicians had been able to review medical evidence from his subsequent appointments with Dr. Dustin, the State agency physicians would have found plaintiff to be disabled.

The commissioner argues that the disability determination transmittal forms relied upon by the ALJ constitute the testimony of a medical expert for purposes of determining whether a claimant satisfies the requirements of a listing. The decision on whether to summon a medical advisor is left to the judgment of the ALJ if she believes she lacks sufficient information and it is necessary to obtain expert opinions to adequately develop the record, Clifford, C-L-I-F-F-O-R-D, versus Apfel, A-P-F-E-L, F.3rd 863 at 873, Seventh Circuit 2000.

Plaintiff's claim that the ALJ would have found plaintiff disabled if the State agency doctors would have reviewed Dr. Dustin's notes is pure speculation, as plaintiff's counsel acknowledged at oral argument. I also don't believe that that is supported by the record.

Here, the ALJ relied upon the medical forms from the State agency physicians and adequately developed the record by considering post-dated evidence from plaintiff's treating physician. The ALJ incorporated both the opinions of the State agency physicians and Dr. Dustin's opinion from January 23rd, 2012, into the plaintiff's RFC. That's in the record at page 19.

Specifically, the ALJ adopted Dr. J. Sands' May 3, 2011, medical evaluation as the basis for the plaintiff's RFC, but added the limitations recommended by Dr. Dustin, which included standing or walking less than one hour at a time.

Additionally, the ALJ noted that Dr. Dustin's statements, both from August 10th, 2011, and January 23rd, 2012, did not indicate that plaintiff was disabled. The ALJ mentioned other medical documentation from Dr. Dustin throughout her determination, including plaintiff's December 15, 2011, visit where he told Dr. Dustin that he had not fallen since using the foot brace. That's in the record at page 259.

The ALJ also acknowledged that plaintiff had a flare-up of pain, but treatment with Vicodin had significantly alleviated that pain. That's in the record at 255 and 259.

None of these records indicate that plaintiff's condition worsened since the review by the State agency doctors, nor does the evidence otherwise support plaintiff's claim that he met or equaled a listing of 1.02. Since the ALJ relied upon substantial evidence and adequately developed the medical record, the Court should defer to the ALJ on whether to summon a medical advisor. Remand is not appropriate.

The third issue is whether the ALJ's credibility determination should be reversed as patently erroneous and contrary to Social Security regulation 96-7p.

Typically, the ALJ is in the best decision to weigh credibility of a claimant; and the Court reviews any determination deferentially, Sims, S-I-M-S, versus, Barnhart, B-A-R-N-H-A-R-T, 442 F.3rd 536 at 538, Seventh Circuit 2006.

The Court will uphold a credibility determination unless it is patently wrong, Craft versus Astrue, 539 F.3rd at 668 at 678, Seventh Circuit, 2008. While the ALJ used boilerplate language

6

to discuss the plaintiff's credibility, the ALJ also provided ample evidence to support her findings.

Before addressing the issue specifically, I would note that plaintiff's credibility argument tracks essentially word for word the credibility argument plaintiff's counsel makes in the case of Scott versus Colvin, Cause No. 13-1052, argued before me on June 20th, 2014. The Court takes judicial notice of the identical nature of these arguments and suggests, respectfully, that such rote replication of arguments is not particularly helpful; and I would encourage counsel to avoid that practice and rather to cite specifically to the record in the context of that argument to help the Court better understand the specific argument being made and the specific reasons why you believe credibility findings were improper.

So turning to the merits, the ALJ considers plaintiff's self assessment that he falls down four or five times a day; but the ALJ observes this is directly contrary to plaintiff's December 15, 2011, visit to Dr. Dustin, where plaintiff reported that he had not fallen since he started wearing his foot brace. That's in the record at page 259.

The ALJ also noted that plaintiff was not taking medication for pain when Dr. Croffie evaluated him on April 27, 2011. These observations support the ALJ's conclusion that plaintiff's complaints of disability are not corroborated by the overall evidence as the ALJ found on page 18 of the record.

Furthermore, the ALJ mentioned the conservative nature of plaintiff's treatment and the vague testimony regarding plaintiff's daily activities. Indeed, the ALJ recognized that plaintiff alleged almost no activities of daily living, as Tudor did not shop, cook, do housework or do laundry. The ALJ considered that, quote, "no clinicians have indicated that the claimant has debilitating problems," end quote. Record at page 18.

7

Perhaps most telling of all was plaintiff's receipt of unemployment benefits, which he started collecting after the alleged onset date of disability. This is a factor that the ALJ may consider in assessing credibility, and the ALJ found plaintiff's credibility as a witness to be poor. Based on the record, the ALJ's determination is supported by substantial evidence.

Finally, plaintiff argues that the ALJ did not give full consideration to all of his documented impairments. The only specific argument the plaintiff makes is that the ALJ failed to account for plaintiff's inability to control his left foot and ankle due to foot drop which cause him to drag his foot -- his left foot and to fall down and his need to use a cane to ambulate.

Once again, plaintiff fails to develop this argument in his brief and simply recites the argument that he made in the case of Scott versus Colvin, which, as indicated, is not particularly helpful or persuasive to me.

A fair reading of the record reveals that the ALJ considered extensive medical evidence to determine the plaintiff's RFC, including visits to Dr. Alley, Dr. Croffie, Dr. Vonfange and Dr. Dustin. The ALJ specifically indicated that plaintiff's, quote, "ability to stand and walk is limited and that Tudor was not capable of repetitive motions with his left foot." That's in the record at page 19.

The ALJ noted Dr. Alley's observation that plaintiff was not using a cane or any other assistive device at the time of the examination and also noted plaintiff's inability to climb, to use ladders, ropes or scaffolds. The ALJ cited these observations from Dr. Alley in her opinion and assigned Dr. Alley's records significant weight in determining plaintiff's RFC.

Additionally, the ALJ noticed that Dr. Alley's evaluation was before Tudor received his foot brace but also recognized that the brace had improved plaintiff's ability to ambulate. I've already addressed plaintiff's challenges to the ALJ's treatment of Dr. Vonfange and Dr. Croffie;

8

and I'm not going to repeat those assessments here, particularly since plaintiff's RFC argument is woefully underdeveloped.

I would emphasize, however, that the ALJ observed Dr. Dustin's noted improvement in plaintiff's pain control with medication and that plaintiff had not fallen since he started using a foot brace to help walking. That's in the record at pages 225 and 259 through 260.

The ALJ also observed that Dr. Dustin never indicated plaintiff was disabled, even in a follow-up medical source statement dated January 23rd, 2012.

Indeed, the ALJ recognized that no medical record indicates plaintiff was disabled, nor did any medical record corroborate the alleged onset date of disability.

This information is relied upon by the ALJ to determine the plaintiff's RFC, and the ALJ incorporated specific language from Dr. Dustin into her final RFC determination.

The ALJ also uses evidence to show that plaintiff was capable of managing his condition, especially since he improved his ambulation with a brace and his pain control with medication. Additionally, the ALJ found that plaintiff's ability to ambulate was improved with Dr. Dustin's treatment, specifically, the foot brace. This indicated to the ALJ that plaintiff was capable of managing his condition.

In summary, the medical evidence considered by the ALJ is voluminous and included consideration of evidence not cited by plaintiff in his brief to the Court. The ALJ relied upon medical evidence from the State agency physicians and Tudor's treating physicians to determine plaintiff's RFC.

Plaintiff's argument that the ALJ did not consider all of his impairments in making the RFC determination lacks merit. Rather, the ALJ supported her determination of the RFC with substantial evidence from multiple physicians and remand is not appropriate on that issue.

For these reasons, I find the ALJ's decision is supported by substantial evidence and that remand is not appropriate.

I will ask the court reporter to transcribe this order, which I will file, along with a separate judgment which, when filed, will begin the time for any appeal. Thank you.

COURT CLERK: All rise.

Dated: 7/3/2014

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

James B. Geren
OFFICE OF GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION
james.geren@ssa.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov